# AFFIDAVIT OF SPECIAL AGENT MAXIMILLIAN PAGANO IN SUPPORT OF APPLICATION FOR A CRIMINAL COMPLAINT

I, Maximillian Pagano, Special Agent, United States Food and Drug Administration, Office of Criminal Investigations, being duly sworn, state the following:

## INTRODUCTION AND AGENT BACKGROUND

1. Your affiant has been employed as a Special Agent with the United States Food and Drug Administration ("FDA") Office of Criminal Investigations ("FDA/OCI") and is currently assigned to the FDA/OCI Miami Field Office located in Plantation, Florida. I have been employed as a Special Agent with FDA/OCI since August 2010. In this capacity, I have participated in numerous investigations concerning criminal violations of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* (hereinafter the "FDCA"), as well as other federal criminal laws. Moreover, in my capacity as an FDA/OCI Special Agent, I also have received extensive training in, among other things, investigations of drug and medical device misbranding and adulteration. Prior to my current employment, I served as a Special Agent with the Department of Homeland Security – Immigration and Customs Enforcement ("ICE"). In connection with both my past and present employment as a law enforcement agent, I have executed and assisted with numerous arrest warrants and am familiar with the probable cause standard for the issuance of a federal arrest warrant.

## PURPOSE OF AFFIDAVIT

2. I submit this affidavit in support of an application for a criminal complaint charging GLADYS ARACELI CERON ("CERON") with Receipt in Interstate Commerce of a Misbranded Device, and the Proffered Delivery Thereof for Pay or Otherwise, in violation of 21 U.S.C. § 331(c).

1

**RELEVANT LAW AND BACKGROUND INFORMATION**

3.     The FDCA defines a medical device, in relevant part, as "an instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including any component, part, or accessory, which is . . . intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in man or other animals, or intended to affect the structure or function of the body of man or other animals, and which does not achieve its primary intended purposes through chemical action within or on the body of man or other animals and which is not dependent upon being metabolized for the achievement of its primary intended purposes."  21 U.S.C. § 321(h)(2) and (3).

4.     The FDCA defines a "prescription device" as "a device which, because of any potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use is not safe except under the supervision of a practitioner licensed by law to direct the use of such device [.]"  21 C.F.R. § 801.109.

5.     Injectable products intended to act as "fillers" in the human body generally are classified as medical devices by the FDA.  The FDA has approved numerous injectable dermal fillers, such as Juvederm and Restylane, as prescription medical devices.  The FDA has not approved any injectable fillers for non-prescription use or for large scale body contouring or body enhancement.

6.     A device is deemed to be misbranded if its labeling lacks adequate directions for use.  21 U.S.C. § 352(f)(1).  "Adequate directions for use" means directions under which a layman can use a device safely for the purposes for which it is intended without a licensed

2

practitioner's supervision.   21 C.F.R. § 801.5.

7.   Pursuant to FDA regulations, prescription devices are exempt from the labeling requirements of 21 U.S.C. § 352(f)(1) if certain conditions are met.   Among other things, a prescription device must be in the possession of a person regularly and lawfully engaged in the manufacture, transportation, storage, or wholesale or retail distribution of the device or in the possession of a practitioner licensed by law to use or order the use of a prescription device.   21 C.F.R. § 801.109(a)(1).   In addition, the label of the device must bear the statement, "Rx only" or "Caution: Federal law restricts this device to sale by or on the order of" a licensed medical practitioner.   21 C.F.R. §801.109(b)(1).   Furthermore, the regulations require that the device "[i]s to be sold only to or on the prescription or other order of such practitioner for use in the course of his professional practice."   21 C.F.R. § 801.109(a)(2).

8.   The FDCA, among other things, prohibits "[t]he receipt in interstate commerce of any … device … that is adulterated or misbranded, and the delivery or proffered delivery thereof for pay or otherwise."   21 U.S.C. § 331(c).

9.   The FDCA imposes strict liability misdemeanor punishment for violations of 21 U.S.C. § 331 and felony punishment for conduct committed with an "intent to defraud or mislead" either consumers or government regulators.   21 U.S.C. § 333(a).

10.   In November 2017, the FDA issued a warning to consumers about the dangers of using injectable silicone for body enhancement:

> [W]hen injected into areas with many blood vessels such as the buttocks ("butt"), silicone can travel through those vessels to other parts of the body and block blood vessels in the lungs, heart, or brain. This can cause a stroke or even death. Large-scale injectable silicone for body contouring and enhancement can also result in a painful and hard, gravel-like substance that stays permanently

beneath the skin.

## STATEMENT OF PROBABLE CAUSE

11.     I am conducting an investigation of CERON for violations of the FDCA.  The information in this affidavit resulted from, among other sources, undercover contacts with CERON, the review of documents obtained from two federal search warrants, other records, interviews of witnesses, an interview of CERON, physical surveillance and the review of publicly-filed documents.  The affidavit is based upon my personal observations, information obtained from other government and law enforcement agents and my training and experience.  The information set forth herein is solely for the purpose of this application and is by no means exhaustive.

12.     On May 25, 2016 at approximately 9:00 am, Special Agents from the FDA/OCI Miami Field Office ("MIF") and Homeland Security Investigations executed a federal search warrant at the residence of Irina ANGEL (hereinafter "ANGEL") located at 3976 NW 7th Court, Delray Beach, Florida 33445.  Evidence seized during the search warrant related to unlicensed cosmetic procedures included numerous vials and ampoules of injectable items including suspected cosmetic silicone fillers (for buttock and facial injections), lidocaine (used for topical anesthesia), miscellaneous bottles and boxes of various drugs and/or medicines related to cosmetic procedures such as chemical fat dissolving and wrinkle filling, blood collection tubes, numerous syringes and needles, orders for drugs, receipts, financial documents, shipping boxes and miscellaneous documents.  The bottles of suspected silicone were sent to the FDA Forensic Chemistry Center ("FCC") for analysis, and were determined to be polydimethlsiloxane (silicone oil).

4

13.     Items seized from the aforementioned search warrant also included United States Postal Service ("USPS") shipping records in the form of customer copies of shipping labels that indicated that between May 20, 2015 and March 8, 2016, there were sixteen shipments of Priority Mail Express packages from ANGEL, 3976 NW 7th Court, Delray Beach, Florida to "Araceli CERON, 17 Grafton, Lawrence, MA 01843."

14.     An FDA/OCI Confidential Witness ("CW") was utilized to initiate undercover contact with CERON. From on or about January 2011 to the present day, in connection with his/her cooperation in this and other investigations for FDA/OCI, the CW has received approximately $3,000. The CW has neither American citizenship nor lawful permanent resident status; he/she has, however, been granted a deferred status (a postponement of the initiation of deportation proceedings) by Immigrations and Customs Enforcement in connection with his/her work in this and other investigations. Information provided to FDA/OCI by the CW in the past has lead to two federal search warrants that corrborated the information provided by the CW. This information also directly lead to the federal conviction of an individual for violation of Title 21 U.S.C. § 331(c) (the receipt in interstate commerce of a misbranded medical device, and the delivery or proffered delivery thereof for pay or otherwise).

15.     On May 22, 2018, at approximately 10:37 a.m., the CW made a recorded call (monitored by agents) to CERON's cellular telephone number xxx-xxx-1548. A female who identified herself as "Gladys" (believed by investigators to be CERON) answered the call. Speaking in Spanish, the CW told Gladys that the CW had heard that Gladys performed cosmetic procedures such as buttock enhancing and facial injections. Gladys told the CW that she does injections for the face, legs and buttocks. Gladys told the CW that she worked every day from

noon until 6:00 p.m., but never in the mornings. Gladys told the CW that she would have to see the CW in-person before she would perform any procedures. The CW made an appointment with Gladys for a consultation for Friday, May 25, at 2:00 p.m. Gladys confirmed that she lived in Lawrence and would text the CW the address. Later that day, the CW received a text from Gladys's cellular telephone number xxx-xxx-1548 advising the CW that her address was 17 Grafton Street, Lawrence, Massachusetts, 01843.

16. On May 23, 2018, at approximately 10:06 a.m., the CW made another recorded call to CERON's cellular telephone number xxx-xxx-1548 and changed the appointment with CERON to 1:00 p.m. on May 24, 2018.

17. On May 24, 2018, at approximately 1:00 p.m., the CW met with CERON at 17 Grafton Street, Lawrence, Massachusetts. The meeting was digitally recorded with a hidden video camera. The CW entered the building on the bottom right side through the second door on the right (there were two doors on the bottom right side of the building). The CW opened the door and called for CERON. CERON called out and told her that the door is always open and to come upstairs. CERON guided the CW to the third-floor attic of the building. The attic consisted of a lounge area furnished with a television, sofa and chairs. CERON led the CW to a back room which contained an examination table and two tables on which sat numerous vials of what appeared to be injectable drugs and devices, boxes of syringes, alcohol, cotton balls, examination gloves and other containers.

18. CERON told the CW that she does buttock enhancement and wrinkle filling injections. For the facial injections, CERON said she uses products called "hialuronico" (believed by me to be Spanish for hyaluronic acid, which, according to the official FDA website,

can be used as a dermal facial wrinkle filler in approved formulas), "mineral" (based on my experience, people have used mineral oil for illicit cosmetic injections) and two other product names that were unintelligible. CERON told the CW that she charges five hundred dollars for the buttock injection which is a one-time procedure. CERON charges sixty dollars for each wrinkle filling facial injection, and after examining the CW, she said that the CW would need six separate facial injections to be performed on six separate visits. The CW did not present a prescription for any dermal fillers nor did CERON ask for one. CERON mentioned that she would use a little anesthesia to help with the pain. CERON said that she had been performing these injections for fifteen years at 17 Grafton Street. CERON told the CW that she rents the attic at 17 Grafton from her sister to do the injections, but she does not reside there. The CW made an appointment to meet with CERON for buttock and facial injections on June 7, 2018 and they agreed that the CW would call before then to set a time on that day.

  19. On the same day, FDA/OCI Special Agent Joseph Ridgley reviewed the video recorded by the CW, which included recordings of CERON's face.[1] SA Ridgley reviewed the image for the Massachusetts Identity Card for CERON (obtained from a law enforcement database) and believes that the image in the ID card is the same person in the video recording. The ID card information lists 309 Mount Vernon Street, Lawrence, Massachusetts as CERON's residence. SA Ridgley also reviewed Accurint records (a law enforcement database that compiles public records), which indicated that the address of 17 Grafton Street is associated with CERON.

---

[1] A still photograph of CERON from the video recorded meeting with the CW is attached as Exhibit A.

20. On May 29, 2018, SA Ridgley reviewed the official website for the Massachusetts Board of Registration in Medicine and no one named GLADYS ARACELI CERON is licensed as a medical doctor or osteopathic doctor. On the same day, SA Ridgley checked the Massachusetts Health Professions License Verification Site, and no one named GLADYS ARACELI CERON is licensed as a nurse, pharmacist or any other medical professional.

21. On June 7, 2018, the CW cancelled her appointment with CERON, with the agreement that the CW would reschedule the appointment.

22. On June 11, 2018, the Honorable Donald L. Cabell authorized an application for a federal search warrant of 17 Grafton Street in Lawrence Massachusetts.

23. The CW re-scheduled her appointment with CERON for June 25, 2018, when the search warrant was executed. The agents seized unlabeled bottles of suspected silicone that appeared similar to the bottles previously seized from ANGEL's residence. The FCC analyzed the following seized items:

a. Item 1: two unlabeled bottles containing colorless liquid determined by the FCC to be polydimethlsiloxane (silicone oil).

b. Item 2a: one syringe/needle device containing colorless liquid determined by the FCC to be lidocaine.

c. Item 2b: one syringe/needle device containing colorless liquid determined by the FCC to be polydimethlsiloxane (silicone oil).

d. Items 3a-3h: eight syringe/needle devices containing colorless liquid determined by the FCC to be polydimethlsiloxane (silicone oil).

e. Item 4a-4h: seven syringe/needle devices containing colorless liquid; 4a, 4b, 4e,

8

4f and 4g determined by the FCC to be polydimethlsiloxane (silicone oil), and items 4c and 4d were identified as lidocaine.

24. Agents also recovered dozens of uncapped, apparently used, syringes in CERON's workspace. Photographs from the search are attached as Exhibit B.

25. Also on June 25, 2018, CERON was interviewed by SA Ridgley and me after being advised that she was free to leave and that her responses to any questions were voluntary. CERON provided the following information as it relates to the items discovered at the search:

CERON stated the bottles containing the clear liquid in the procedure room were used for gluteal injections and contained "hyaluronic acid and something else." CERON stated this material is sometimes labeled as "massage oil" or "depilatory wax" and she charges $800 to inject the material for each side of the gluteus for a total of $1600. CERON stated she purchases the gluteal injection material exclusively from Irina KARNASKAYA and provided the following contact information from her personal cell phone for her: "IRINA PRODUCTOS DE ESTETICA B T X" with Broward County Florida telephone number xxx-xxx-4037. CERON stated she had been purchasing the gluteal injection material from KANARSKAYA for approximately eight years and has never received a complaint about it.

26. CERON stated the clear material in the bottles for the gluteal injections "probably is silicone." CERON stated she knows performing the gluteal injections is illegal in the United States. CERON stated she pays KANARSKAYA over the phone for the gluteal injections material using her Metro Credit Union Visa. I know from my personal involvement in this case that Irina KANARSKAYA and Irina ANGEL mentioned in Paragraph 12 are the same person. A query of public records shows that Irina ANGEL also goes by the name Irina

9

KANARSKAYA.  Public records also show that ANGEL's phone number is the same Broward County phone number ending in 4037 that CERON displayed on her cell phone as belonging to her supplier of gluteal material.

27.     On February 12, 2019, SA Ridgley and I conducted two separate interviews with individuals in the Boston area who both had previous contact with CERON, hereafter referred to as Witness 1 ("W1") and Witness 2 ("W2").

28.     W1 stated that W1 visited CERON in June 2018 at CERON's house in Lawrence, Massachusetts for cosmetic injections to W1's face.  W1 stated CERON told W1 the material was hyaluronic acid, and W1 paid CERON approximately $300 for the injections.  W1 stated the material has hardened in W1's body and has not gone away.  W1 has been quoted a price of $4000 from a medical specialist to have this material removed, but W1 could not afford it.  W1 stated CERON offered filler injections for other areas of the body to include the lips, legs, stomach and gluteus.

29.     W2 had contact with CERON in June 2018.  W2 received CERON's contact information through word of mouth as someone who performs cosmetic procedures in her attic in Lawrence, Massachusetts.  W2 stated that W2 decided to receive buttock injections from CERON, and CERON told W2 the material she used for the injections was a hyaluronic acid product she bought from Europe.  CERON told W2 that the product was safe.  According to W2, CERON displayed to W2 what she said was a medical certification to perform the injections, and that she was trained in Venezuela as a doctor and was licensed to operate in the United States.  W2 stated CERON had what appeared to W2 to be licenses and medical

10

documents on the wall in the attic.[2]  W2 stated that although W2 decided against performing the buttock injections, W2 received Botox injections from CERON on other occasions.

## CONCLUSION

30. Based on the foregoing, I submit that there is probable cause to believe that GLADYS ARACELI CERON did violate 21 U.S.C. § 331(c) (the receipt in interstate commerce of an adulterated or misbranded medical device, and the delivery or proffered delivery thereof for pay or otherwise), when she offered to inject the CW with a misbranded device in order to enhance CW's buttocks in exchange for payment.

Sworn to under the pains and penalties of perjury.

_____
MAXIMILLIAN PAGANO, SPECIAL AGENT
FOOD AND DRUG ADMINISTRATION
OFFICE OF CRIMINAL INVESTIGATIONS

Subscribed and sworn before me on May 14, 2019.

_____
HONORABLE DONALD L. CABELL
UNITED STATES MAGISTRATE JUDGE

---

[2] During the execution of the search warrant, agents observed a certificate from Boston University School of Medicine hanging on the wall of CERON's workspace indicating that CERON completed a course relating to skincare in 2008.

# Exhibit A



# Exhibit B-1



# Exhibit B-2



# Exhibit B-3

